## COMMONWEALTH *vs.* RUMFORD CHEMICAL WORKS.

The statutes of the Commonwealth have not superseded the remedy by indictment at common law for a nuisance in carrying on an unlawful and offensive trade and manufacture.

An indictment for a nuisance at common law sufficiently describes the nuisance, and is not bad for duplicity, which alleges that the defendants at a certain day and place set up and maintained certain buildings, and on that day and on divers others between that day and the day of the finding of the indictment used and employed therein large quantities of acid, guano, tar, oil, bone and dead bodies and other noxious and offensive substances in the manufacture of acids, colors, chemicals and chemical products, by means whereof divers noxious and offensive smokes, gases, smells and stenches were emitted, so that the air was filled and impregnated therewith, and rendered corrupt and unwholesome, to the great damage and common nuisance of all persons then and there being.

MERRICK, J.   This is an indictment against the defendants for a nuisance in maintaining and carrying on an offensive trade and manufacture at Seekonk in the county of Bristol.   Such acts constitute a misdemeanor prohibited and punishable by the common law.   Bac. Ab. Nuisance, A.   *Rex* v. *Neil*, 2 Car. & P. 485.   1 Russell on Crimes, (7th Amer. ed.) 318.   After a plea of *nolo contendere*, the defendants moved in arrest of judgment,

upon the ground that the indictment did not set forth any offence now prohibited by law, or for which any party can be prosecuted by indictment, or punished upon conviction under it. Their motion is predicated upon the position that the whole common law upon this subject has been impliedly, but effectually, repealed by the statutes of the Commonwealth.

In the case of *Commonwealth* v. *Cooley*, 10 Pick. 37, it was held that a statute is impliedly repealed by a subsequent one revising the whole subject matter of the first; and that the implication is at least equally strong in relation to a revision of the common law. But it is never to be presumed that the legislature intended to make any innovations upon the common law further than is absolutely required upon a just interpretation of the provision sof its positive enactments. And this, it is said by Chancellor Kent, has been the language of the courts in every age. 1 Kent Com. (6th ed.) 464. In the decisions of our own, it has often been recognized as an established rule that a statute is not to be construed as a repeal of the common law unless the intent to alter it is clearly expressed. *Commonwealth* v. *Knapp*, 9 Pick. 514. *Melody* v. *Reab*, 4 Mass. 473. It is a direct and necessary consequence from this principle, that a statute may be in affirmance of the common law, adding new regulations and supplying additional remedies, but leaving in full force those which might before have been resorted to for the redress of public or private grievances.

It is then to be considered whether the several statutes of the Commonwealth, in reference to the places where and the buildings in which offensive trades, manufactures or other employments may be established and carried on, were intended by the legislature to supersede and repeal the whole common law on the same subject. The first of these statutes was enacted soon after the adoption of the constitution. It appears to have been taken substantially from those which were in force under the provincial charter, and was limited to certain enumerated kinds of business. *St.* 1785, *c.* 1. Regulations were subsequently prescribed respecting the exercise of any trade or employment offensive to the inhabitants or dangerous to the pub-

lic health. Rev. Sts. *c.* 21, §§ 47–49. And again in 1855 " an act in relation to offensive trades" was enacted. *St.* 1855, *c.* 391. The provisions of these several statutes were revised and re-enacted, with some alterations and amendments, in the General Statutes, which were in force when the defendants entered their plea, and filed their motion in arrest of judgment. Gen. Sts. *c.* 26, §§ 52 *& seq.*

In examining the provisions in the several statutes, we think it does not appear to have been the intention of the legislature to repeal the entire common law on the same subject. Authority is given to the board of health in the different towns and cities within the Commonwealth from time to time to assign certain places within their respective municipal limits for the exercising of any trade or employment which is a nuisance or hurtful to the inhabitants, and to prohibit their exercise in places not so assigned, or if they shall think proper, within any part of the town. Gen. Sts. *c.* 26, § 52. This general provision is followed by others prescribing the mode of proceeding and the remedy of parties alleging themselves to be injured, when the board have acted under the authority conferred. So far as these provisions extend, the rules and course of proceeding under the common law are superseded; but in all other respects it continues in force as before. If the board of health acts and assigns places in which any particular trade or employment may be carried on, such an assignment would undoubtedly legalize the occupation of any person conducting his business in that place; and he would then be liable to no process, suit or prosecution other than those which are specially appointed and prescribed. But if no such assignment has been made, and the board of health in the exercise of their discretion have not seen fit to act at all, a remedy for injuries to the public, or for the violation of private rights, by the permanent maintenance of offensive trades and employments, must be found in the rules and principles of the common law. The statute, by leaving that body to act according to the discretion of its members, has imposed no duty upon them which they are imperatively bound to perform; and no means have been provided by a recourse to which, as by a complaint

made to them, they can be compelled to exercise the power with which they are entrusted. Yet cases may readily be supposed in which they might not think it expedient to act, but which in the judgment of others, or of a jury, would fully establish the fact of the existence and maintenance of a nuisance. The statute ought not to be construed so as to leave such cases beyond repression by the power of the law. And the omission to provide for all possible or probable cases clearly evinces that the legislature did not intend to revise the whole subject, and to supersede the entire common law in relation to this class of offences; but only to modify and repeal it in and for the particular instances, and in reference to the enumerated circumstances, which are specially provided for. In all other respects, it is apparent that no change or innovation was contemplated or intended to be introduced or established.

The indictment against the defendants being a proceeding under and according to the common law, it is not affected by the repeal by the General Statutes of any acts previously existing. Its allegations set forth with sufficient precision and accuracy the charge of establishing, maintaining and continuing an offensive trade. The averments that the defendants on a day named set up, erected and maintained certain buildings, and on said day and on divers days and times between that day and the day of the finding of the indictment did, in said buildings, unlawfully use and employ, decompose and combine, large quantities of acid, guano, tar, oil, bone and dead bodies, and other noxious and offensive substances, in the manufacture of acids, colors, chemicals and chemical products, by means whereof divers noxious, offensive and unwholesome smokes, gases, smells and stenches, were issued and emitted from said buildings, during all the time aforesaid, so that the air then and there was thereby filled and impregnated therewith, and rendered corrupt, offensive and unwholesome, to the great damage and common nuisance of all persons then and there being, set forth and describe the alleged nuisance in a full, substantial and formal manner.

The objection that it does not show what should be abated

is immaterial, since that is not a necessary part of the judgment to be rendered upon conviction.' The accused, if found guilty, may be sentenced to the payment of a fine ; and when the indictment is against one or more persons the punishment may be also by imprisonment. 1 Russell on Crimes, 331.

Nor is the indictment against the defendants obnoxious to the objection of duplicity that is urged against it. It alleges a continuing offence, and in this respect it follows the language of approved and accurate precedents. 2 Chit. Crim. Law, 628 & *seq.* Archb. Crim. Pl. (10th ed.) 633.

*Exceptions overruled.*

*B. Sanford & R. C. Pitman,* for the defendants.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.